UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS CLIFFORD, *et al.*,

    Plaintiffs,

v.

CONCORD MUSIC GROUP, INC.,

    Defendant.

No. C-11-2519 EMC

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

**(Docket No. 17)**

---

Defendant's motion to dismiss portions of Plaintiffs' first amended complaint ("FAC") came on for hearing before the Court on January 27, 2012. Docket No. 17. For the reasons set forth below, the Court **GRANTS IN PART** Defendant's motion to dismiss Plaintiffs' FAC.

## I. FACTUAL & PROCEDURAL HISTORY

Plaintiffs Douglas Clifford and Stuart Cook, along with Tom Fogerty and John Fogerty were members of the music group, Creedence Clearwater Revival ("CCR"). FAC ¶ 1. Plaintiff Patricia Fogerty is Tom Fogerty's widow, and claims an interest in Tom Fogerty's CCR royalties. FAC ¶ 1.

CCR entered into a contract with Defendant Concord Music Group, Inc. in 1969. FAC ¶ 8. The contract provided Defendant with the exclusive rights to use CCR's master sound recordings in exchange for royalty payments to CCR. FAC ¶ 8. In December 1988, the contract was amended so that when Defendant licensed CCR's master sound recordings to third parties, Defendant would pay Plaintiffs 50% of its net receipts. FAC ¶ 10. The contract further provided that Defendant would pay a 50% royalty of its net receipts for most sales outside of America. FAC ¶ 11. Defendant was

permitted to create a reserve account to offset returns, which would be limited to 25% of the royalties earned. Docket No. 16-2, at 12-13.

Plaintiffs allege that Defendant failed to pay receipts as required when it licensed the CCR master sound recordings to Apple for digital sale. FAC ¶ 15. Rather than pay Plaintiffs the 50% royalty, Defendant paid Plaintiffs a 13.5% royalty used for the direct sale of CDs, resulting in a loss of $1.6 million in royalties. FAC ¶ 15. Plaintiffs further allege that Defendant has failed to release over $130,000 in unused amounts in the reserve account. FAC ¶ 18. Plaintiffs also identify other unpaid royalties, including the Defendant licensing the master sound recordings to Columbia House for the sale of CDs and foreign royalties. FAC ¶¶ 16, 17. Based on Defendant's failure to pay, Plaintiffs brought suit alleging five causes of action: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) declaratory relief, (4) conversion, and (5) constructive trust. Defendant now moves to dismiss the second, fourth, and fifth causes of action of the FAC.

## II. DISCUSSION

A.  Second Cause: Breach of the Covenant of Good Faith and Fair Dealing

"Every contract requires one party to repose an element of trust and confidence in the other to perform. For this reason, every contract contains an implied covenant of good faith and fair dealing, obligating the contracting parties to refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Wolf v. Superior Court*, 107 Cal. App. 25, 31 (2003). Thus, "under traditional contract principles, the implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.'" *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988)). Because the implied covenant of good faith and fair dealing is distinguishable from tort law, a breach of the implied does not necessarily give rise to a tort action. *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 91 (1995).

In the instant case, Defendant argues that Plaintiffs cannot assert a claim for breach of the covenant of good faith and fair dealing because Plaintiffs have not pled any tortious conduct.

1  Docket No. 17 at 5 ("Motion").  In their opposition papers and at the hearing, Plaintiffs asserted that
2  they were not raising a claim for tortious breach of the covenant of good faith and fair dealing, but a
3  claim for *contractual* breach of the implied covenant.  Docket No. 21 at 4 ("Opp.").  California
4  courts have distinguished between contractual breach and tortious breach of the covenant of good
5  faith and fair dealing.  *Innovative Bus. P'ships, Inc. v. Inland Counties Reg'l Ctr., Inc.*, 194 Cal.
6  App. 4th 623, 631, 32 (2011).  No tortious conduct is required for a contractual breach of the
7  implied covenant, and Plaintiff asserts no tortious breach.  Accordingly, the Court denies
8  Defendant's motion to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair
9  dealing.

10  B.     Fourth Cause:  Conversion

11      A conversion claim arises where there is an "act of dominion wrongfully exerted over
12  another's personal property in denial of or inconsistent with his rights therein."  *Weiss v. Marcus*, 51
13  Cal. App. 3d 590, 599 (1975).  Neither legal title nor absolute ownership of the property in question
14  is necessary for a conversion claim; instead, "[a] party need only allege it is *entitled to immediate*
15  *possession at the time of conversion*."  *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45
16  (2010).  Furthermore, "[m]oney cannot be the subject of a cause of action for conversion unless
17  there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be
18  paid to another and fails to make the payment."  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs,*
19  *Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007).  While "a mere contractual right
20  of payment, without more, will not suffice" to establish conversion, courts have recognized a
21  sufficient ownership interest when the plaintiff has a lien on the funds in question.  *Farmers Ins.*
22  *Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997); *see also Weiss*, 51 Cal. App. 3d at 598 (finding
23  that the plaintiff had conversion claim where the plaintiff had a lien on the proceeds of a settlement).
24      In *Imperial Valley Land Co. v. Globe Grain & Milling Co.*, the California Supreme Court
25  rejected a conversion claim where the plaintiff leased land to the defendant in exchange for one-
26  fourth of the crop as rental.  187 Cal. 352, 353 (1921).  There, the one-fourth amount merely
27  established the amount of rent paid by the tenants to the landlord.  *Id.* at 353-54.  As the agreement
28  did not create title in the landlord to the crop itself, the court found that the crop was not the basis

1 for a conversion claim. *Id.* In contrast, in *McCafferty v. Gilbank*, the court found that the plaintiff
2 had a conversion claim where the plaintiff had an equitable lien on the proceeds of a settlement. 249
3 Cal. App. 2d 569, 575-76 (1967). There, the plaintiff had received a judgment against the
4 defendant's client in the amount of $10,320. *Id.* at 571. The defendant's client later entered into an
5 unrelated litigation against a third party. *Id.* Knowing that the plaintiff could impose a judicial lien
6 on any judgment secured in the unrelated litigation, the defendant's client entered into a written
7 agreement with the plaintiff, promising her 50% of any settlement to satisfy the prior judgment. *Id.*
8 at 572. The court found that this agreement created an equitable lien, as the agreement was made to
9 protect the defendant and the defendant's client from a judicial lien. *Id.* at 575-76. Based on this
10 lien, a conversion claim existed because the plaintiff had "a property interest in such proceeds and
11 not just his client's promise to pay the agreed sum when due." *Id.* at 576.

12 In the instant case, two funds are at issue. First, Plaintiffs assert an ownership interest in the
13 royalties owed. FAC ¶¶ 41, 43. The parties dispute whether Defendant's payment of royalties goes
14 beyond a mere contractual obligation because the contract identifies the specific source of the
15 royalty payment. The relevant provision states:

> As to masters licensed to third parties (other than a subsidiary, affiliate or related company of Fantasy), including recordings sold through record clubs or similar sales plans Fantasy will pay Artist a royalty *equal to* fifty percent (50%) of Fantasy's net receipts (which means all monies actually received by Fantasy less all applicable taxes (other than income taxes) and collection fees.

20 Docket No. 16-2 at 11 (emphasis added). This provision does not create a property interest in
21 Defendant's net receipts. Instead, the contract states that Plaintiffs will receive a royalty "*equal to*"
22 50% of Fantasy's net receipts, not that Plaintiffs are entitled to 50% of Fantasy's net receipts. Like
23 *Imperial Valley Land Co.*, the net receipts establish the measure of the amount Plaintiffs are entitled
24 to, rather than creating an ownership interest in an identifiable sum. *See* 187 Cal. at 353-54. As
25 Plaintiffs do not have a property interest in the payment of royalties equal to 50% of the receipts,
26 Plaintiffs do not have a conversion claim as to the royalties.

27 Second, Plaintiffs assert an ownership interest in the reserve account's $130,000 in unused
28 amounts. FAC ¶ 42. The relevant contractual provision states:

> Reserve Account. Fantasy retains the right, at its sole option, to create and hold a reasonable reserve account against royalties payable hereunder. The reserve account shall be limited to a maximum of twenty-five percent (25%) of royalties earned and shall be used to offset returns. If such reserve account is established by Fantasy, royalties should be held for not more than six (6) months after what otherwise would be the due date of the payment of royalties as set forth herein.

Docket No. 16-2 at 12-13. Unlike the royalty provision, which states that Plaintiffs will receive a royalty "equal to" 50% of Fantasy's net receipts, the reserve account consists of an identifiable fund made up of royalties otherwise owed to Plaintiffs in order to offset returns. After six months, Defendant is required to liquidate and return any remaining amount if the reserve account after deductions for returns are made. Docket No. 16-2 at 13. Thus, after six months, Plaintiffs are entitled to immediate possession of the remaining amount in the reserve account, as this amount was originally made up of the Plaintiffs' royalties. This amount is specifically identifiable as the sum within the reserve account after six months because after six months, no further deductions are to be made. This case is analogous to *McCafferty*.

At the hearing, Defendant argued that there was no actual reserve account, but that the funds are located within the general fund. Thus, because Defendant did not actually set aside these royalties in a separate fund, Defendant claims that Plaintiffs do not have a conversion claim. Defendant cites no case holding a formal set aside is required; instead, California case law suggests the opposite. In *McCafferty*, the plaintiff only had an entitlement to 50% of the settlement. 249 Cal. App. 2d at 573. Thus, the fact that the royalties in the reserve account in the case at bar were kept in the general fund rather than an actual separate account does not defeat Plaintiffs' conversion claim. Accordingly, the Court finds that Plaintiffs have a claim for conversion based on the money in the reserve account.

C.    Fifth Cause: Constructive Trust

Defendant contends that Plaintiffs' constructive trust claim fails because constructive trust is a remedy, not a cause of action. Motion at 8. Courts have permitted separate causes of action for constructive trust where there is fraud, breach of duty, or any other act that entitles the plaintiff to some relief. *See Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (1996); *Weiss*,

5

51 Cal. App. 3d at 600. The pleading requirement for a constructive trust claim are satisfied once the plaintiff identifies the facts constituting the underlying cause of action and the specific identifiable property to which the defendant has title, the plaintiff satisfies the pleading requirements for constructive trust. *Michaelian*, 50 Cal. App. 4th at 1114. As discussed above, Plaintiffs have sufficiently pled a conversion claim as to the identifiable sum in the reserve account, which Defendant currently holds. Accordingly, the Court finds that Plaintiffs have a claim for constructive trust as to the reserve account funds.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' conversion and constructive trust claims based on Defendant's alleged failure to pay royalties. The Court **DENIES** Defendant's motion to dismiss as to Plaintiffs' claims for: (1) breach of the covenant of good faith and fair dealing, (2) conversion as to the reserve account funds, and (3) constructive trust as to the reserve account funds.

This order disposes of Docket No. 17.

IT IS SO ORDERED.

Dated: February 6, 2012

_____
EDWARD M. CHEN
United States District Judge